UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAIED TADAYON *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GREYHOUND LINES, INC.,<br><br>Defendant. | Civil No. 10-1326 (ABJ/JMF) |

MEMORANDUM OPINION

This case was referred to me for discovery. Currently pending and ready for resolution are 1) Plaintiffs' Concurrent Motion to Compel Full and Proper Responses to Saied Tadayon's Discovery Requests of June 28, 2011; Motion for Sanctions; and Motion to Determine Claim of Privilege [#48], and 2) Greyhound Lines, Inc.'s Combined Motion for a Protective Order and Motion to Compel Plaintiffs to Answer Interrogatories [#50]. For the reasons stated below, both motions will be denied.

INTRODUCTION

Plaintiffs are Saied and Bijan Tadayon, owners of a wireless technology patent. Complaint for Patent Infringement and Demand for Trial by Jury [#1] at ¶¶ 1, 7. Defendant is Greyhound Lines, Inc., a company that operates motorcoaches. Id. at ¶¶ 2, 8. According to plaintiffs, defendant infringed on their patent by utilizing the plaintiffs' technology on its buses. Id. at ¶¶ 6-25.

DISCUSSION

I.   Plaintiffs' Motion to Compel

     A.    <u>Any Alleged Deficiencies in Defendant's Paper and Electronic Productions are Now Moot</u>

Defendant initially produced the documents responsive to plaintiffs' requests for production in paper form but later made an electronic production. At a recent hearing, however, plaintiffs, who proceed *pro se*, indicated that they had created their own database from defendant's production, rendering coercive relief against defendant as to its previous productions moot.

     B.    <u>Any Alleged Deficiencies in Defendant's Interrogatory Responses may be Cured by Deposition</u>

Plaintiffs also complain of deficiencies in defendant's responses to their interrogatories and move to compel supplemental answers. [#48-2] at 6-30. As I pointed out at the hearing, however, both parties are now ready to begin the next phase of discovery, where the taking of depositions (whether of individuals or organizations pursuant to Rule 30(b)(6)) allows either party to cure any alleged deficiencies in her opponents' interrogatory responses. As I understand plaintiffs to have accepted the validity of that proposition, I will, in the interests of judicial efficiency and to move the parties further along the road to the next phase of discovery, deny their motion to compel in this regard without prejudice to its renewal after depositions are taken.

     C.    <u>Defendant did not Waive any Claimed Privileges</u>

The parties in this case entered into an agreement that permitted either party to retrieve documents that it initially produced but then later claimed were privileged, a so-called "clawback provision."[1] See Fed. R. Civ. P. 26 (b)(5)(B) (expressly authorizing clawbacks). On December 14, 2011, defendant invoked that provision of their agreement and "clawed back" some

---

[1] See <u>Stipulated Protective Order</u> [#36] at ¶ 24.

documents it claimed were privileged, after having produced them to plaintiffs. Greyhound Lines, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Compel Full and Proper Responses to Saied Tadayon's Discovery Requests of June 28, 2011; Motion for Sanctions; and Motion to Determine Claim of Privilege [#53] at 36. Plaintiffs, however, argue in their motion to compel that defendant's hurried negligence should be deemed a waiver of the privilege. [#48-2] at 34-38. But, they do not point to any portion of the agreement that conditions a party's right to clawback privileged documents upon its satisfying a court that its original production was free of defects and not negligent. To the contrary, as defendant correctly points out, the contractual right to clawback documents described in the agreement was not conditioned in any way, let alone upon a showing that the initial production was not the product of negligence. [#53] at 37. Since the right to clawback was not so conditioned, the agreement stands as written and defendant may recall the privileged documents, irrespective of whether or not its initial production was negligent.

      D.      <u>The Court will not Award Plaintiffs Sanctions</u>

Finally, plaintiffs allege that, on numerous occasions, defendant failed to respond to discovery requests in a timely fashion and generally engaged in "delay tactics." [#48-2] at 6. Specifically, plaintiffs argue that on August 25, 2011, defendant told plaintiffs that it would respond to their discovery requests within the next three weeks and then deliberately did not do so. Id. at 6-12. In support of their argument, plaintiffs reference various communications between the parties regarding the progress of discovery and anticipated production dates. Id. Plaintiffs complain that these communications show that defendant had no intention of responding to their discovery requests and that defendant's only goal was to delay the

proceedings so that it could file a renewed motion to stay, which it did on September 19, 2011. Id. at 12. Plaintiffs also site the conclusions reached by Judge Jackson in her October 4, 2011 order as further proof of defendant's bad faith. Id. at 12-13. Plaintiffs ultimately contend that defendant should be sanctioned for its behavior, through an award of attorney's fees, pursuant to both Rule 37(b)(2) of the Federal Rules of Civil Procedure and the Court's inherent authority. Plaintiffs' Reply to Greyhound Lines, Inc.'s Memorandum in Opposition [Dkt. 53] to Plaintiffs' Motion to Compel Full and Proper Responses to Saied Tadayon's Discovery Requests of June 28, 2011; Motion for Sanctions; and Motion to Determine Claim of Privilege [#58] at 24-25.

        1.       Rule-Based Sanctions are not Warranted

On October 4, 2011, Judge Jackson issued an order that contained the following admonition:

> In sum, defendant has apparently failed to comply with its discovery obligations . . . it sought a stay after the materials were overdue, and it is acting as if its motion [to stay] has already been granted notwithstanding the Court's prior denial of a similar motion. Therefore, the defendant is hereby ORDERED to respond completely to plaintiff's first set of interrogatories and requests for productions [sic] of documents in accordance with both the Federal Rules of Civil Procedure and the Local Rules of this Court on or before October 14, 2011. Any failure to respond or incomplete or evasive response shall be subject to Fed. R. Civ. P. 37(b)(2).

Minute Order dated October 4, 2011.

On October 17, 2011, in response to defendant's request for clarification of her previous order, Judge Jackson issued another order:

> The purpose of the Court's October 4, 2011 order was to confirm that defendant's obligations to engage in discovery were ongoing notwithstanding the pendency of the motion to stay, but that defendant's objections to the requests as they were originally

propounded are preserved for the record. If plaintiff seeks to compel the production of additional information that has been withheld or defendant seeks a protective order covering information not yet produced, such discovery disputes must be resolved in accordance with the procedures set forth in the scheduling order.

Minute Order dated October 17, 2011.

When viewed together, Judge Jackson's minute orders make two things clear. First, defendant failed to respond to plaintiffs' discovery requests by the date defendant promised that it would and second, defendant's discovery obligations are ongoing, despite its repeated efforts to stay the proceedings pending the outcome of patent reexamination. The issue, therefore, is whether defendant's conduct is sanctionable under Rule 37 and whether plaintiffs are entitled to an award of attorney's fees.

The answer is no to both questions. Judge Jackson's conclusion, in her October 4 order, that "defendant has apparently failed to comply with its discovery obligations" is a reference to the obligations mandated by Rule 26 of the Federal Rules of Civil Procedure, not the obligations imposed by any previous court order. Furthermore, even if defendant's behavior following Judge Jackson's October 4 and October 14 orders is deemed sanctionable on the grounds that it violated court orders, the relief plaintiffs seek, an award of attorney's fees, is unavailable to them.

Rule 37 permits an award of sanctions if, *inter alia*, a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). In addition, if a party fails to obey a discovery order, section (b)(2)(C) permits the court, in addition or instead of the sanctions permitted by section (b)(2)(A), to make the disobedient party pay "the reasonable expenses, including attorney's fees, caused by the failure [to obey the order in question]." Fed. R. Civ. P.

37(b)(2)(C).

Two other sections of Rule 37 also speak to the award of reasonable expenses, including attorney's fees, to a party who has prevailed either in compelling discovery or resisting it by securing a protective order.  Rule 37(a)(5)(A) provides that a party who has filed a successful motion to compel must be paid the "reasonable expenses incurred in making the motion, including attorney's fees" unless certain exceptions (irrelevant here) apply.  Conversely, when the shoe is on the other foot, and a party has successfully resisted an effort to secure an order compelling disclosure, she too may be awarded her reasonable expenses, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(B).  The reimbursement provided for in Rule 37, however, does not extend to work performed by a party appearing *pro se*.

In Kooritzky v. Herman, 178 F.3d 1315 (D.C. Cir. 1999), the court of appeals for this Circuit concluded that the words "fees and other expenses" under the Equal Access to Justice Act, 28 U.S.C. § 2412, did not include compensation to a *pro se* litigant for his time as an attorney or witness. Id. at 1317-23.  Three years later, in Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365 (Fed. Cir. 2002), the Federal Circuit construed the word "incurred" in Rule 37 to preclude an award of attorney's fees to a *pro se* lawyer for his own time. Id. at 1375.  Two years after the Pickholtz decision, the court of appeals for this Circuit adopted the Federal Circuit's interpretation of the words "attorneys' fees reasonably incurred because of such conduct" to preclude compensation for time spent by a litigant in attending his own trial. Manion v. Am. Airlines, Inc., 395 F.3d 428, 432-33 (D.C. Cir. 2004).  Given the court of appeals' express approval of the Pickholtz holding, it would appear therefore to be the law of this Circuit that a *pro se* lawyer may not recover for his own time spent seeking or opposing a motion to compel.

Furthermore, even though plaintiffs are seeking attorney's fees under section (b)(2)(C)–that deals with disobedience to a court–and not under section (a)(5)(A)–that deals with losing a discovery motion–the same reasoning still applies.  The court of appeals has expressed its approval of the determination by the Federal Circuit that a *pro se* litigant's time did not constitute "expenses incurred" under Rule 37(a)(5)(A). Manion v. Am. Airlines, Inc., 395 F.3d at 433 (quoting Pickholtz v. Rainbow Techs., Inc., 284 F.3d at 1375)).  The court of appeals for this Circuit therefore concluded the following: "Nor can one's time constitute a payable expense, as there is no direct financial cost or charge associated with the expenditure of one's own time." Id. (internal quotations omitted).

Although section (b)(2)(C) of Rule 37 does not contain the word "incurred," it would be incongruous and irrational in light of the court of appeals' decision in Manion to suppose that a *pro se* attorney *can* recover reasonable expenses caused by her opponent's failure to comply with a court order but *cannot* recover attorney's fees incurred in making or opposing a discovery motion.  Instead, as the Federal Circuit concluded in Pickholtz, the word "expenses" in the Federal Rules does not include the time spent by a lawyer who is proceeding *pro se*.  While there may be a linguistic difference between the phrases "incurring fees" in one section of Rule 37 and "paying reasonable expenses" in another section, there can be no difference between the interpretation of the word "expenses" that appears in sections (b)(2)(C) and (a)(5)(A) & (B) of the same rule–Rule 37.  In either case, the time a *pro se* lawyer spends on her own case is not reimbursable.  I therefore conclude that plaintiffs' claim for rule-based sanctions, premised on Rule 37(b)(2)(C), fails.

        2.       <u>The Court will not Award Sanctions Based on its Inherent Authority</u>

I appreciate that plaintiffs also urge the Court to exercise its inherent authority to sanction the defendant. But, the exercise of such inherent authority is, under the law of this Circuit, reserved for those instances where a party establishes by clear and convincing evidence that a party committed sanctionable misconduct that is tantamount to bad faith. Ali v. Tolbert, 636 F.3d 622, 627 (D.C. Cir. 2011). "A party demonstrates 'bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.'" In re Vitamins Antitrust Litig., 398 F. Supp. 2d 209, 243 (D.D.C. 2005) (quoting Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978)). Having reviewed the record in this case and heard the arguments, I find that defendant's behavior does not rise to the level of a bad faith attempt to delay the resolution of this case.

Additionally, while defendant's responses to plaintiffs' discovery requests may have not been as timely as they should have been, fact discovery in this case is not scheduled to close until November 5, 2012.[2] Thus, whatever delay defendant may have caused was minor and ultimately did not prejudice plaintiffs in any way. Plaintiffs' demand for inherent authority sanctions therefore fails as well. See In re: Fort Totten Metrorail Cases Arising Out of the Events of June 22, 2009, 279 F.R.D. 18, 24 (D.D.C. 2011) (premature claim of prejudice will not warrant sanctions).

II.   Defendant's Motion to Compel

   A.   Any Alleged Deficiencies in Plaintiffs' Interrogatory Responses may be Cured by Deposition

Greyhound also moves for an order to compel supplemental responses to interrogatories. [#50] at 31-38. As I noted above, however, any alleged deficiencies may be cured by deposition.

---

[2] See Scheduling Order [#33] at 2.

Therefore, as with plaintiffs' motion to compel in this regard, so too will defendant's motion to compel be denied without prejudice to its renewal following the taking of depositions.

      B.      <u>Defendant's Application for Sanctions has Merit</u>

Like plaintiffs, defendant also moves for sanctions pursuant to Rule 37, arguing that plaintiffs' motion to compel is "riddled with frivolous arguments and discussions of issues long resolved" and that plaintiffs failed to comply with their meet and confer obligations under the Local Rules. [#53] at 35.

Under Rule 37, if a motion to compel is denied, the court may order the moving party to pay the opposing party's expenses, including attorney's fees, unless the motion was "substantially justified." Fed. R. Civ. P. 37(a)(5)(B). In this case, because plaintiffs' motion to compel was denied, it is appropriate to consider whether it was substantially justified or whether an award of attorney's fees to defendant is appropriate. The following chart illustrates the sequence of events leading up to the filing of plaintiffs' motion to compel.

| Date | Event | Citation |
|---|---|---|
| 6/28/11 | Plaintiffs propounded their first set of requests for production of documents. | [#50-51] |
| 8/1/11 | Defendant submitted responses to plaintiffs' first set of requests for productions of documents. | [#50-13] |
| 10/4/11 | Judge Jackson issues minute order directing defendant to respond completely to plaintiffs' first set of interrogatories and requests for production. | Minute Order dated 10/4/11 |
| By 10/14/11 | Defendant produced 45,417 pages of responsive documents. | [#50-3] at 4. |
| 10/14/11 | Defendant submitted amended responses to plaintiffs' first set of requests for productions of documents. | [#50-8] |

| 10/17/11 | Judge Jackson issues minute order confirming that defendant's obligations to engage in discovery were ongoing notwithstanding the pendency of the motion to stay. | Minute Order dated 10/17/11 |
| --- | --- | --- |
| 10/20/11 | Defendant sent (via Federal Express) plaintiffs "a disc containing a native format copy of all Microsoft Excel files from Greyhound Lines, Inc.'s document production to date." | [#50-27] |
| 12/8/11 | Defendant produced an additional 12 pages, bringing the total to 45,429. | [#50-3] at 4. |
| 12/12/11 | Defendant submitted its second amended responses to plaintiffs' first set of requests for productions of documents. | [#50-37] |
| 12/21/11 | Defendant submitted its third amended responses to plaintiffs' first set of requests for productions of documents. | [#50-49] |
| 12/21/11 | Plaintiffs filed their motion to compel. | [#48] |

It is clear from the above chart that plaintiffs' motion was not substantially justified. Within ten days of Judge Jackson's October 4, 2011 order, defendant produced 45,417 pages of responsive documents. Within sixteen days of Judge Jackson's October 4, 2011 order, defendant provided plaintiffs with a disc containing all responsive documents. Between that date and the date plaintiffs filed their motion, defendant continued to supplement its production. Nevertheless, plaintiffs filed their motion compel, even though by the time the document was filed, most of the discovery disputes had been rendered moot by the production of the electronic version of the documents as well as by plaintiffs' development of their own database. Furthermore, at no point in time after the filing of plaintiffs' motion to compel did they consider withdrawing it or modifying it even though they knew that most of the issues had been rendered moot.

Therefore, with respect to defendant's motion for sanctions, plaintiffs will be ordered to show cause why a sanction, in the form of attorney's fees, should not be awarded against them

for the time defendant spent opposing plaintiffs' motion to compel.

III.    High Noon

As explained at the discovery status hearing held on April 30, 2012, there is a new sheriff in town–not Gary Cooper, but me. The filing of forty-page discovery motions accompanied by thousands of pages of exhibits will cease and will now be replaced by a new regimen in which the parties, without surrendering any of their rights, must make genuine efforts to engage in the cooperative discovery regimen contemplated by the Sedona Conference Cooperation Proclamation.[3] First, the parties will meet and confer in person in a genuine, good faith effort to plan the rest of discovery. They shall discuss and agree, if they can, on issues such as the format of any additional productions, the timing and staging of all depositions, the submission to each other of discovery reports, and the scope and timing of any Federal Rule of Civil Procedure 30(b)(6) depositions. The parties will then jointly submit their discovery plan for my approval. I commit myself to work with them in resolving any disagreements, whether they arise initially or during discovery. To that end, I will schedule a telephonic status conference every two weeks in which I will ask the parties about their progress (or lack thereof) and try to resolve any disagreements they have.

An Order accompanies this Memorandum Opinion.

---

[3] See The Sedona Conference Cooperation Proclamation, (July 2008), https://thesedonaconference.org/cooperation-proclamation (last visited May 4, 2012).

                                                                      _____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE